WELCOME P. PARTELLO, GUARDIAN OF HENRY G. HOLTON, AN ALLEGED INCOMPETENT PERSON, v. THOMAS HOLTON.

*Incompetent person—Appointment of guardian—Requisites of petition—Notice of hearing—Statutes construed.*

1. The fact that a man is unable to provide a comfortable and suitable maintenance for his family, even when coupled with the fact that he makes foolish bargains and squanders all he

earns, is not made a statutory reason why he should have a guardian appointed over him (How. Stat. §§ 6314, 6317, 6318), and the further allegation that he is not of sufficient ability to manage his personal affairs furnishes no adequate reason for such appointment. *Brown's Case*, 45 Mich. 326.

2. The power of appointment of a guardian for an incompetent person by the probate court is derived from the statute, and, in order to obtain jurisdiction, the statute must be strictly pursued. *North v. Joslin*, 59 Mich. 646; *In re Storick*, 64 Id. 685; *In re Bassett*, 68 Id. 348.

3. The brother of an alleged incompetent person, who is also the mortgagee in a mortgage executed for his use and benefit, is entitled to notice of proceedings looking towards the appointment of a guardian for such brother, instituted on the petition of his wife. See cases above cited, and *In re Myers*, 73 Mich. 401.

Appeal from Gratiot. (Hart, J.) Argued January 24, 1890. Decided January 31, 1890.

Complainant, as guardian of an alleged incompetent person, filed a bill to compel the transfer to him of a mortgage executed to defendant for the use and benefit of the ward. Defendant appeals. Decree directing collection of mortgage by defendant, and payment of proceeds into court, reversed, and bill dismissed. The facts are stated in the opinion.

*James K. Wright,* for complainant.

*C. W. Giddings,* for defendant.

[The points of counsel, and authorities cited, are fully stated in the opinion.—REPORTER.]

MORSE, J. The complainant, claiming to have been duly appointed guardian by the probate court of Gratiot county over the person and effects of Henry G. Holton, an incompetent person, filed his bill in the Gratiot circuit court in chancery, averring as follows: That on November 8, 1884, Martin J. Holton was owing to said

Henry G. Holton the sum of $324, to secure which sum he on that day executed a mortgage upon certain premises in Gratiot county, which said mortgage was executed to the defendant, Thomas Holton, for the use and benefit of the said Henry G. Holton, because at that time the said Henry was not considered competent to have the care and management of said money; that Thomas Holton holds the said mortgage in trust for said Henry, who is now incompetent, and unable to care for and provide his family with suitable maintenance; that Thomas Holton has received two installments of interest upon said mortgage, which he neglects and refuses to pay over for said Henry's use and benefit; that Henry has no property above the amount of $50, except this mortgage, which is worth its face value, $324.

That after his appointment as guardian the complainant demanded of said Thomas Holton an assignment of said mortgage, together with payment of said installments of interest, which demand was refused; that complainant then presented to said defendant an assignment of said mortgage, and requested him to execute it, tendering him one dollar for expenses and trouble, but said defendant refused to execute the same; that said defendant has said that he would never pay one cent of the amount of said mortgage to said Henry G. Holton, or to any other person, so that his family would get any benefit from it. He prays that defendant may be compelled to assign the mortgage to him.

The defendant answered, admitting the execution of the mortgage from Martin J. Holton to him to secure a debt owing to Henry G. Holton, and that the same was made to the defendant for the use and benefit of said Henry; but he denies that it was so made because said Henry was incompetent to have the care and management of that amount of money. He alleges that at the time

the said Henry, who is his brother, was a single man, and had, before that time, to wit, May 10, 1884 (the mortgage being executed November 8, 1884), constituted the said defendant his attorney in fact, and that as such attorney in fact he was empowered to collect this debt against Martin J. Holton, and that, acting as such attorney, he received this mortgage. He denies that the complainant was ever legally appointed guardian of said Henry, and challenges his right to act as such guardian. Defendant further alleges that said power of attorney from Henry to him is unrevoked, and still in full force and effect. He denies that he holds the security simply in trust for Henry, or that Henry is incompetent, and unable to provide for his family. He admits receiving the two installments of interest, but denies that complainant ever demanded this interest of him, and he avers that he has paid all of it to Henry. He admits demand and refusal to assign the mortgage over to complainant, but denies the tender of any money to pay expenses of such assignment, or that he ever said he would never pay one cent of the amount of the mortgage to Henry.

The defendant, further answering, says that, prior to February, 1885, the said Henry was a single man, and worked about the neighborhood, making his home a portion of the time with defendant and other relatives, and that about the first of the month he claimed to intermarry with one Livona Goodwin, a daughter of complainant; that said Livona was weak-minded, and, prior to her supposed marriage with said Henry, had become to a certain degree a county charge; that, since her marriage with said Henry G. Holton said Henry has been able to and has provided for her, and for a child born to them since said reported marriage; that defendant is advised and believes that, if complainant gets control of said mortgage, the said Henry will never get a dollar of

it; that if there has ever been a marriage between said
Henry and complainant's daughter, he is informed and
believes that said marriage was brought about by the
design and intrigue of the said complainant, for the pur-
pose of placing the burden of the care of said daughter
upon the unsuspecting Henry, and to relieve himself of
such responsibility; and that in filing said bill, and
therein charging the incompetency of the said Henry,
the complainant is practicing a fraud upon the court,
and trying to cheat said Henry out of the moneys evi-
denced by said mortgage.

It will be readily seen by these pleadings, as is also
shown by the proofs, that this mortgage belongs to
Henry, and that this contest is between complainant and
defendant to determine which of them shall handle the
moneys secured by it.

The first matter to be examined is the alleged appoint-
ment of the complainant as guardian. If the probate
court had no jurisdiction in the premises, as claimed by
defendant's counsel, the complainant has no standing, and
his bill should be dismissed.

In the court below the circuit judge evidently entered
a compromise decree, leaving the mortgage in the
hands of the defendant, but ordering him to collect the
interest on the same as fast as it became due, and to pay
the same, as fast as collected, to the register in chancery,
to be paid by him over to the guardian for the use of
said Henry G. Holton, and reported to the probate court.
It was also decreed that the defendant should collect the
mortgage when due, and discharge the same, and pay the
proceeds thereof to the register of the court. No costs
were allowed to either party, and it was decreed that the
expenses of the litigation should not be allowed against
the estate of the incompetent.

The defendant appeals.

The complainant was appointed guardian, June 30, 1886. The petition for such appointment was made by Livona Holton, representing that she was the wife of said Henry G. Holton (named in the petition as George Henry Holton); that he was of the age of 37 years, and resided in the town of Bethany, Gratiot county, and was possessed of about $300 personal property, besides money due him for work. The grounds for the appointment were set out in the petition, as follows:

"1. Said George Henry Holton, being the husband of your petitioner and the father of a child about one year of age, is unable to provide suitable and comfortable maintenance for his family.

"2. Said George Henry Holton it not of sufficient ability to manage his personal affairs.

"3. That he is in the habit of making foolish bargains, and squanders what he may earn."

The petition stated that the next of kin of said Holton, and persons interested in said estate, was the petitioner, Livona Holton. This petition was dated May 19, 1886.

The whole record of the proceedings in the probate court is not shown, but the counsel for defendant contends that the petition upon its face did not give the probate court jurisdiction to act upon it. This contention is correct. The first and third allegations are entirely outside of the statute, and furnish no reasons for the appointment of a guardian under the laws of this State.

There are two statutes authorizing such appointment, —one—

"When the relations or friends of any insane person, or of any person who, by reason of extreme old age or other cause, is mentally incompetent to have the charge and management of his property, * * * shall apply to the judge of probate," (How. Stat. § 6314); and the other provides that "when any person, by excessive drinking, or by gaming, idleness, or debauchery of any kind, shall so spend, waste, or lessen his estate as to

expose himself or his family to danger of want or suffering,"—

Certain officers may present a complaint to the judge of probate, setting forth the facts and circumstances of the case, and upon certain proceedings secure the appointment of such guardian. See How. Stat. §§ 6317, 6318. It is not claimed by complainant's counsel that the petition can be sustained under this last provision of the statute. But he argues that a showing that a husband and father is unable to provide a comfortable and suitable maintenance for his family, and is not of sufficient ability to manage his personal affairs, and is in the habit of making foolish bargains and in squandering what he earns, is equivalent to an averment that he is "mentally incompetent to have the charge and management of his property," under section 6314.

The second allegation in the petition is that Holton "is not of sufficient ability to manage his personal affairs." We are of the opinion that the petition does not meet the requirements of the statute. The fact that a man is unable to provide a comfortable and suitable maintenance for his family, even when coupled with the fact that he makes foolish bargains and squanders all he earns, is not made by either statute a reason why he should have a guardian appointed over him. If it were, a goodly number of people would be under guardianship. The allegation that Holton "is not of sufficient· ability to manage his personal affairs," added to the others, furnishes no adequate reason under the statute.

In *Brown's Case*, 45 Mich. 326 (7 N. W. Rep. 899), the petition set forth that Brown was incompetent to have the care, charge, and management of his property, and that he was old and infirm. It was held that the statute contemplated the existence of insanity or of mental infirmity that is equivalent in destroying mental competency.

The language of the Court in that case is applicable to this. There is no mental infirmity shown in the petition here, nor is it necessarily inferred from the allegations therein that the mental capacity of Holton is such that he is unable to manage his estate. It is rather to be inferred from the petition, taken as a whole, that from idleness or shiftlessness Holton is unable to support his family as he ought to, and that what he does earn he dissipates in foolish bargains or expenditures.

The power of appointment of a guardian by the probate court is derived from the statute, and, in order to obtain jurisdiction in such cases, the statute must be strictly pursued. *North v. Joslin,* 59 Mich. 646 (26 N. W. Rep. 810); *In re Bassett,* 68 Id. 348 (36 N. W. Rep. 97); *In re Storick,* 64 Id. 685 (31 N. W. Rep. 582). In the last case cited above we held that the statute (How. Stat. § 6314) does not refer to persons who are sane, but not, perhaps, as wise or intelligent as some other persons, but applies to those whose mind is so affected as to have lost control of itself to such a degree as to deprive the person afflicted of sane and normal action; and that the petition must either follow the statute, or use language and state facts fully equivalent, or the court will not obtain jurisdiction.

It does not appear from the record whether any person was notified of this appointment save the wife, but the testimony shows that the defendant, who was the brother of the alleged incompetent, and who held this mortgage under a power of attorney not revoked, first learned of the appointment when called upon by the guardian to account for and to assign over said mortgage to said guardian. Under the circumstances, he was entitled to notice of the proceedings looking towards the appointment of a guardian. *In re Bassett,* 68 Mich. 348; *North*

*v. Joslin,* 59 Id. 624; *In re Myers,* 73 Id. 401 (41 N. W. Rep. 334).

The decree of the circuit court for the county of Gratiot, in chancery, must be reversed, with costs of this Court against the complainant personally. The bill of complaint must be dismissed on the ground that complainant has never been legally appointed guardian of said Henry G. Holton, and therefore the estate of said Holton cannot be charged with any expenses arising out of this litigation.

CHAMPLIN, C. J., CAMPBELL and GRANT, JJ., concurred.