IN RE GUARDIANSHIP OF CLARA KIRSCH CARPENTER.
MELVIN T. OWENS, RESPONDENT.[1]

October 28, 1938.

No. 31,772.

*W. L. Hursh,* for appellant.
*F. M. Miner* and *John D. Greathouse,* for respondent.

HOLT, JUSTICE.

The appeal is from the judgment of the district court affirming an order of the probate court denying appellant's petition to strike out certain parts in prior records as erroneous and inadvertent and to vacate and annul the orders heretofore entered herein for want of jurisdiction of the court.

Upon the petition of appellant the probate court of Hennepin county, by order of March 12, 1935, appointed Edward J. Loring as guardian of her estate, consisting of personal property of the value of about $50,000, and real estate from which an annual in-

[1]Reported in 281 N. W. 867.

come of $15,000 is derived. Appellant is about 40 years of age. Loring duly qualified. June 26, 1935, appellant petitioned the court to be restored to capacity, therein erroneously stating that she had been adjudged incompetent and that Loring was the appointed guardian of both her person and estate. She alleged that she was of sound mind and capable of taking care of herself and her estate. Her petition was heard by O. J. Anderson, the probate judge of Wright county, acting for the probate judge of Hennepin county. Judge Anderson's decision, dated July 24, 1935, recognizes that appellant in her petition for restoration had erroneously stated that her person was under guardianship, for he states that the files and records disclose that Loring "was appointed guardian of her estate only," and also that, "it further appearing from the files that the said Clara Kirsch Carpenter is not declared mentally incompetent, and no order for restoration is therefore necessary, but it being claimed by the said guardian that, by reason of her physical condition, and her inability to properly handle money, a guardian of her estate should be continued," but whereas Loring did not desire to continue and in open court stated that upon her written request to resign, he would resign and file his final account within 14 days after receiving such notice, the court ordered the petition for restoration dismissed and directed that when such final account was filed by Loring a time and place be fixed for hearing on its allowance and notice to be published and copy of such account served on appellant. Loring did resign and filed his final account as guardian, and, on due notice, the final account came before the court for allowance on September 13, 1935. In the order allowing it, made September 25, 1935, the court recites that on that day appellant renewed her petition for restoration and that it came up for hearing, and then the order finds as facts that the account filed by Loring was correct and his services rendered were of the value of $300, and further: "That said ward was on the 12th day of March, 1935, an incompetent person and was so found and adjudicated by this court at said time; that her incompetency still exists"; that the petition for restoration should be denied, and that Zenith E. Cline be appointed guardian of "the person and estate" of appellant. In her

petition of September 25 appellant stated that she had been informed and believes from conversations had with her attorneys and statements made to her by the court that it is the "intention to appoint another guardian of her property or person, or both," upon Loring's removal, against which she earnestly protests, because "she is now in good mental and physical health and capable of managing her own affairs, including her own person and her property," and that she has been advised that under the law the court has no power to appoint a guardian of her property or person, except upon competent testimony the court can determine that she is mentally or physically incompetent to act for herself. That there has no such proof been submitted to the court or is contained in its records, wherefore it is beyond the power and jurisdiction of the court to appoint a guardian. However, her petition proceeds: "If, however, the court is of the opinion that it possesses the power, upon the record as it now stands, to lawfully make such appointment, she, in her own right," asks that Zenith E. Cline be appointed. After his appointment and qualification, Cline resigned and respondent was appointed his successor with the consent and approval of appellant as shown by her affidavit filed with the court October 2, 1935. March 16, 1936, appellant filed the petition here involved to expunge certain erroneous statements from the record and annul the proceedings as void on the ground of want of jurisdiction. The probate court denied the petition by order dated June 5, 1936, which order, after reciting appearance by the attorneys, proceeds:

"And the court, after duly hearing the evidence adduced in said matter and being fully advised in the premises finds the following facts:

"1. That since this matter was submitted to the court, the petitioner herein has filed a petition asking that she be restored to capacity; that by filing said petition, said petitioner obviously admits that she has been adjudicated incompetent.

"2. That said petition for restoration has been duly heard and submitted, and the issue therein involved will be decided by a separate order.

"3.    That by reason of the above facts, it is the conclusion of this court that the petition of said ward above mentioned, should be denied."

And it was so ordered.    Manifestly the facts found do not sustain the conclusion.    But since the appeal to the district court results in a trial *de novo*, the probate court's erroneous view or disposition of the petition of March 16, 1936, is of no importance on this appeal from the judgment of the district court.    There was no oral testimony in the district court, the decision being placed upon the records above referred to in the probate court.

The motion of March 16, 1936, is not a collateral but a direct attack upon the guardianship proceedings.    The probate court is by the constitution invested with jurisdiction of persons under guardianship (art. 6, § 7), but the statute regulates the manner in which a probate court is authorized to take jurisdiction of any particular estate or person.    2 Mason Minn. St. 1927, § 8708, provides that a particular probate court is invested with authority to proceed when a petition is filed with it respecting a matter within its jurisdiction.    An order made by the probate court without such petition in a matter within its jurisdiction is void and of no effect.    Bombolis v. M. & St. L. R. Co. 128 Minn. 112, 150 N. W. 385.    We conceive that when the petition is to place a person of age under guardianship it must *prima facie* state facts that bring such person within one of those designated in 2 Mason Minn. St. 1927, § 8924, as subject to guardianship.    The section reads:

"The probate court may appoint a guardian or guardians of any person who, by reason of old age or loss or imperfection of mental faculties, is incompetent to have the management of his property, or one who by excessive drinking, gaming, idleness, or debauchery so spends or wastes his estate as to be likely to expose himself or his family to want or suffering.    Such appointment may be made upon the petition of the county board, or of any relative or friend of such person, which petition shall set forth the facts, and be verified by the affidavit of the petitioner that he believes the facts stated to be true."

In this case there was no pretense of stating facts that brought petitioner under the second or spendthrift provision of § 8924. It is apparent from the decisions in this and other states that mere ill health or physical ailments do not warrant placing a person under guardianship. The statute itself indicates that it is the loss or imperfection of the mental faculties which justifies the court in taking jurisdiction. In Scott v. Whitely, 168 Minn. 74, 209 N. W. 640, we held that one who recognizes the need of being placed under guardianship may petition therefor and waive notice of hearing. The guardianship of incompetents being designated for their protection should be so considered as to avail on their own initiative. But, that notwithstanding, we think the petition should on its face indicate the existence of a proper case for guardianship. The instant petition alleged neither old age nor any other fact from which loss or imperfection of mental faculties could be inferred. Neither in the petition nor in the order of appointment is incompetency averred or found. In examining the record in the case of Scott v. Whitely it is found that the petition stated the petitioner's age and that she "is unable and incompetent to care for and manage said property by reason of the following facts and disability, to-wit: That she is in very poor health, is feeble and infirm and is now an inmate in the St. Louis County Alms House." And in the order appointing a guardian for her person and property it was found as a fact that she was incompetent and unable to manage her property. It occurs to us that when Mrs. Carpenter petitioned the probate court to be restored to capacity the decision of Judge Anderson dismissing her petition on the ground that she had never been adjudged incompetent ought to have terminated the proceeding. There was no appeal from Judge Anderson's order. Mrs. Carpenter's subsequent petition for restoration of capacity was of course ineffective and barren of averments to serve as an original petition for the purpose of placing either her person or property under guardianship, and did not authorize Judge Fosseen to find her incompetent.

The placing of one not a minor under guardianship is of great importance. The very fact that it is a protective measure and for

the personal welfare of the one afflicted with incompetency makes it desirable that the safeguards which the statute has seen fit to provide be complied with, namely, that the petition state the existence of the incompetency designated by statute, and that the order appointing the guardian indicate that the person subjected to guardianship has been found in fact incompetent. Otherwise the record fails to disclose jurisdiction. In Michigan the necessity of a petition which discloses mental incompetency under its statutes, much like ours, is deemed essential to the jurisdiction of the probate court. In re Estate of Brown, 45 Mich. 326, 7 N. W. 899; In re Guardianship of Storick, 64 Mich. 685, 31 N. W. 582; In re Chappell's Estate, 189 Mich. 526, 155 N. W. 569.

We do not overlook the proposition that probate courts are courts of record and their orders and judgments not subject to collateral attack in the field intrusted to them by the constitution. And from that it would follow that in a collateral attack the order appointing a guardian might be considered as implying that the court considered and found incompetency even though there was no such adjudication spread on the record; in other words, that an adjudication of incompetency was implicit in the order appointing a guardian. But, as stated before, this is a direct attack on the proceeding, and it does not appear that any orders have been made in the proceeding that will affect the rights of any other person than Mrs. Carpenter. If Mrs. Carpenter is to be placed under guardianship there should be filed in the probate court a petition which duly invests the court with jurisdiction, and upon the court determining her incompetency the court's record should so indicate.

The judgment is reversed.

STONE, JUSTICE (concurring in the result).

I cannot agree that the probate court had no jurisdiction. That is because the constitution, art. 6, § 7, does not restrict its jurisdiction to persons *properly* under guardianship. The grant is of jurisdiction over all "persons under guardianship," without restriction or exception. We must blind ourselves to reality to say that here there was no guardianship at all. If there was, I submit, with

deference to the authority *contra,* that the probate court had jurisdiction. But there was inadvertence and resulting error of such character that the motion to vacate should have been granted in the probate court. If that be so, the order denying that motion was erroneously affirmed in the district court, and so should be reversed.

Under 2 Mason Minn. St. 1927, § 8701, aided somewhat by § 8983, the probate court has the same power as the district court to vacate an order, judgment, or decree procured "by fraud, misrepresentation, or through surprise or excusable inadvertence or neglect." See In re Estate of Gragg, 32 Minn. 142, 19 N. W. 651. This, a proceeding *in rem,* is still pending in the probate court, subject only to this appeal. It has not been terminated by final decree, so the rule of Tomlinson v. Phelps, 93 Minn. 350, 101 N. W. 496, has no application. The district court has power to vacate an appealable order made before judgment and even to permit a renewal or repetition of the motion. That power is not lost because of expiration of the time for appeal. Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. Inasmuch as the probate court, in its domain, has the same power as the district court, the motion under review was not barred because of expiration of the time for appeal from the order which it attacked. For the reasons stated by Judge Holt, that motion should have been granted, but, I submit, for mere error rather than want of jurisdiction.

The reach of this decision is not at all limited by the fact that this is a direct rather than a collateral attack. If the proceedings in the probate court are void for want of jurisdiction, they would be vulnerable to collateral attack anywhere and any time, even though they involved the sale of the ward's property by the guardian. Time has no forge whereon to fabricate shields for judicial proceedings void on their face. That is the condemnation we are placing on all that has been done in this case. (For the reason indicated, I think it erroneous and am confident that it is at least unnecessary.) Therein lies a danger which, in my view, we should not create unless we are compelled to when the issue is properly before us and decision one way or the other is inescapable.